[Civ. No. 46350. First Dist., Div. Four. Nov. 9, 1979.]

SAVE EL TORO ASSOCIATION et al., Plaintiffs and Appellants, v. VIRGINIA M. DAYS as Mayor, etc., et al., Defendants and Respondents.

COUNSEL

Tichinin & Mitchell and Robert B. Mitchell for Plaintiffs and Appellants.

Rusconi, Foster & Thomas and Ernest Rusconi for Defendants and Respondents.

OPINION

CHRISTIAN, J.—Appellants Save El Toro Association and others (hereafter Save El Toro) appeal from an order of the superior court denying their motion for an award of attorney's fees.

In the litigation underlying the present appeal, Save El Toro filed a complaint against the mayor and other officials of the City of Morgan Hill, seeking a judgment annulling a resolution creating an assessment district, voiding the approval of subdivision maps for the district, and restraining the sale of subdivided lots and the construction of improvements in the district. The trial court granted a temporary restraining

order. After a hearing, the trial court dissolved the order and denied preliminary and permanent injunctions. Save El Toro appealed. In *Save El Toro Assn. v. Days* (1977) 74 Cal.App.3d 64, 70-74 [141 Cal.Rptr. 282] (hereafter *Save El Toro I*), this court held that the City of Morgan Hill had not adopted an open space plan as required by the Open Space Lands Act (Gov. Code, §§ 65560-65570), and therefore could not take any action to acquire, regulate, or restrict open space land or to approve a subdivision map. We reversed the order of the superior court dissolving the temporary restraining order and denying the preliminary injunction. After further proceedings, the superior court issued a permanent injunction conforming to the appellate decision.

Having prevailed in *Save El Toro I,* appellants moved in the trial court for an award of attorney's fees. The court denied the motion. Save El Toro argues that this was error.

A prevailing party generally is not entitled to recover attorney's fees in the absence of a contractual agreement. (Code Civ. Proc., § 1021.) This general rule is subject to several exceptions, including the "common fund," "substantial benefits," or "private attorney general" exceptions. Appellants argue that they are entitled to attorney's fees under either of the latter two exceptions.

### The Substantial Benefits Theory

Save El Toro contends that it is entitled to attorney's fees under the substantial benefits theory, an outgrowth of the common fund exception. ■ The substantial benefit theory permits the award of fees when a litigant, suing in a representative capacity, obtains a decision resulting in the conferral of a substantial, actual and concrete, pecuniary or nonpecuniary benefit on the members of an ascertainable class, and the court's jurisdiction over the subject matter makes possible an award that will spread the costs proportionately among the members. The substantial benefits, like the common fund theory, rests on the principle that those who have been "unjustly enriched" at another's expense should under some circumstances bear their fair share of the costs entailed in producing the benefits they have obtained. A court, in the exercise of its equitable discretion, may decree that those receiving the benefit should contribute to the costs of its production. Although an award of attorney's fees will render the benefited parties "involuntary clients" of the attorneys, equitable considerations justify charging those

who have obtained an economic windfall with the costs of obtaining such benefits. So long as the costs bear a reasonable relation to the benefits, the "involuntary client" who retains a substantial gain from the litigation generally will have no just cause of complaint. (See generally *Woodland Hills Residents Assn. v. City Council of Los Angeles* (1979) 23 Cal.3d 917, 942-948 [154 Cal.Rptr. 503, 593 P.2d 200]; *Serrano v. Priest* (1977) 20 Cal.3d 25, 38-42 [141 Cal.Rptr. 315, 569 P.2d 1303] [*Serrano III*].)

The substantial benefits exception arose out of corporate litigation involving a stockholders' derivative action (see *Fletcher v. A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313 [72 Cal.Rptr. 146]), but the theory may be applied in a wide variety of circumstances, including those involving governmental defendants. To justify an award of fees under the substantial benefits exception, the benefits conferred must be substantial, actual and concrete, but may be pecuniary or nonpecuniary. (See e.g., *Northington v. Davis* (1979) 23 Cal.3d 955 [154 Cal.Rptr. 524, 593 P.2d 221] [award in part from savings made possible when city abandoned construction of a helipad as a result of plaintiff's suit]; *Card v. Community Redevelopment Agency* (1976) 61 Cal.App.3d 570 [131 Cal.Rptr. 153] [award from increased property tax increment revenues resulting from plaintiff's suit]; *Mandel v. Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244, 90 A.L.R.3d 728] [award from savings made possible after state eliminated religious holiday for employees as a result of plaintiff's suit]; *Knoff v. City etc. of San Francisco* (1969) 1 Cal.App.3d 184 [81 Cal.Rptr. 683] [award from increased tax revenues recovered as a result of plaintiff's suit].)

Because the substantial benefits doctrine rests on the principle of preventing unjust enrichment, the effectuation of constitutional or statutory policy, without more, is not a sufficient basis to award attorney's fees under this theory. When the benefits bestowed on others become less tangible and more ephemeral, as is the case with the effectuation of constitutional or statutory policy, the equity in charging involuntary beneficiaries with the costs of obtaining such benefits on an unjust enrichment theory becomes troublesome. Although the plaintiff and others in the benefited class may place a high value on such intangible benefits, other members of the benefited class may place a lower value on such benefits, and may legitimately complain that they should not be involuntarily saddled with costs that are out of proportion to their perceived benefit. Under such circumstances, the notion of unjust enrichment fails as a justification for an award of attorney's fees. However, the effectuation of constitutional or statutory policy may justify an

award under the "private attorney general" theory to be discussed below. For example, in *Woodland Hills Residents Assn.* v. *City Council of Los Angeles, supra,* 23 Cal.3d 917, 942-948, the California Supreme Court held that even if the plaintiff's suit established the important principle of law (*id.* at p. 946) that local authorities must make specific findings that a subdivision is consistent with the applicable general plan before approving a subdivision map, these "'stare decisis' benefits" did not justify an award of fees under the substantial benefits theory. (*Id.* at pp. 946-947.) Similarly, even if plaintiff's suit, without regard to the stare decisis benefits, provided significant benefits to the general Los Angeles populace by assuring that the particular development at issue in the case was not approved without a specific determination that the subdivision in fact conformed to the applicable general plan, this did not justify a fees award under the substantial benefits theory. (*Id.* at p. 947.) However, the Supreme Court remanded the case to the trial court for evaluation of the plaintiff's motion for fees under a private attorney general theory.

As a second example, the California Supreme Court in *Serrano III, supra,* 20 Cal.3d 25, 42, held that even if "plaintiffs and their attorneys... rendered an enormous service to the state and all of its citizens by insuring that the state educational financing system shall be brought into conformity with the equal protection provisions of our state Constitution so that the degree of educational opportunity available to the school children of this state will no longer be dependent upon the taxable wealth of the district in which each student lives," such a service did not justify an award of fees under the substantial benefits rule. Instead, the Supreme Court affirmed the trial court's award of attorney's fees under a private attorney general theory. (*Id.* at pp. 42-47.)

As a final example, in *Northington v. Davis, supra,* 23 Cal.3d 955, plaintiff taxpayers challenged the legality of a proposed police helipad within 250 feet of a public elementary school. In part as a result of the lawsuit, the police department abandoned the construction of the helipad, and the city thereby saved $9,600 in construction costs. The trial court awarded the plaintiffs $11,000 in attorneys' fees under the substantial benefits doctrine. The California Supreme Court held that although the savings of only $9,600 could not justify an award of $11,000 under the substantial benefits theory, the trial court under unjust enrichment principles could properly award a reasonable portion of such savings to at least partially compensate plaintiffs' attorneys. More-

over, on remand the trial court could consider whether the plaintiffs were entitled to an additional element of recovery of attorney's fees under a private attorney general theory.

Save El Toro contends that it is entitled to attorney's fees under the substantial benefits theory on three grounds. First, according to Save El Toro, the decision in *Save El Toro I* provides "substantive information...to local and area planners with regard to general plan requirements." The decision will "find widespread use as a planning tool" and "will be taken to heart by those affected and acted upon, thus reducing future litigation." This is another way of saying that *Save El Toro I* conferred "stare decisis benefits" on the public. Such benefits do not provide an adequate justification for the recovery of attorney's fees under the substantial benefits theory, for the reasons discussed above, although they may justify an award under a private attorney general theory.

Second, Save El Toro contends that the City of Morgan Hill adopted a general plan in accordance with Government Code section 65302 and an open space plan in accordance with Government Code sections 65560-65570 as a result of the holding in *Save El Toro I*. The decision thus resulted in the effectuation of statutory policy in Morgan Hill. For the reasons given above, the effectuation of statutory policy is not an adequate basis of recovery under the substantial benefits theory, although it may justify an award under the private attorney general theory.

Third, Save El Toro contends that as a result of the holding in *Save El Toro I,* El Toro Peak, a "sensitive and scenic environmental landmark," has been "protected from ill-considered intrusion which would have destroyed its unique public value." (*Id.*) This is another way of saying that *Save El Toro I* resulted in the effectuation of statutory policy in Morgan Hill. Presumably, as a result of *Save El Toro I,* El Toro Peak is saved from "ill-considered intrusion," but not from carefully considered intrusion pursuant to valid general and open space plans. Again, the effectuation of statutory policy is not an adequate basis of recovery under the substantial benefits theory, although it may justify an award under a private attorney general theory. Save El Toro has not demonstrated that the trial court erred when it determined that Save El Toro was not entitled to attorney's fees under the substantial benefits theory.

### The Private Attorney General Theory

Save El Toro argues that it is entitled to attorney's fees under the private attorney general theory. ■ This theory seeks to encourage suits effectuating a strong public policy by awarding substantial attorney's fees to those who successfully bring such suits and thereby confer benefits on a broad class of citizens. This doctrine rests on the recognition that in our complex society, citizens in great numbers frequently have interests in common that, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their vindication by private recourse to the courts. Although there are offices and institutions within the executive branch of the government whose function is to represent the general public in such matters and to ensure proper enforcement (e.g., the Attorney General's office), those offices and institutions are not always able adequately to carry the burden of enforcement, rendering private action socially useful. The issues involved in such litigation are often extremely complex and their presentation time-consuming and costly. The award of substantial attorney's fees to public interest litigants and their attorneys (whether private attorneys acting pro bono publico or members of "public interest" law firms) who are successful in such cases encourages the representation of deserving interests and worthy causes. (See *Serrano III, supra,* 20 Cal.3d 25, 44. See also *Woodland Hills Residents Assn.* v. *City Council of Los Angeles, supra,* 23 Cal.3d 917, 933.) Because these policies underlie the private attorney general theory but not the substantial benefits doctrine, the effectuation of constitutional or statutory policy may justify an award of fees under the private attorney general doctrine, but not under the substantial benefits doctrine. The basic rationale underlying the private attorney general theory is to encourage the presentation of meritorious constitutional, statutory, or other claims affecting the general public or a large class of persons.

The California Supreme Court has recognized the private attorney general theory as a basis for awarding attorney's fees to successful litigants who have vindicated a public policy having a constitutional basis, stature, or dimension. (*Serrano III, supra,* 20 Cal.3d 25.) The *Serrano III* court expressly left open the question whether courts, in the exercise of their equitable powers, may award attorney's fees under the private attorney general theory if the litigation has vindicated a public policy having a statutory rather than a constitutional basis. (*Id.,* at p. 47.)

The Legislature codified the private attorney general theory in Code of Civil Procedure section 1021.5,[1] explicitly authorizing court-awarded attorney fees under a private attorney general theory "in any action which has resulted in the enforcement of an important right affecting the public interest" regardless of the source of the right—constitutional, statutory or otherwise. Unlike the *Serrano III* decision, section 1021.5 establishes the propriety of a private attorney general fee award in cases other than those vindicating constitutionally based policies.[2] Save El Toro does not contend that it vindicated a constitutionally based policy in *Save El Toro I*. The remainder of our discussion therefore will deal with the codification of the attorney general theory in section 1021.5, rather than with the judicially created doctrine under *Serrano III*.[3]

Under section 1021.5, a court may award attorney's fees to a successful plaintiff if (1) plaintiff's action "has resulted in the enforcement of an important right affecting the public interest"; (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons"; (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate"; and (4) "such fees should not in the interest of justice be paid out of the recovery, if any." (Code Civ. Proc., § 1021.5. See also *Woodland Hills Residents Assn.* v. *City of Los Angeles, supra,* 23 Cal.3d 917, 934-942.) If a trial court determines that litigation has resulted in the vindication of a strong or socially important public policy, that the necessary costs of securing this result transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization, and that a substantial number of persons stand to benefit from the decision, the court may award attorney's fees on a private attorney general theory. (*Serrano III, supra,* 20 Cal.3d 25, 45.)

---

[1] Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

[2] In its "Memorandum and Order," the trial court stated that section 1021.5 codifies the substantial benefits theory. This is incorrect. (See *Woodland Hills Residents Assn.* v. *City Council of Los Angeles, supra,* 23 Cal.3d 917, 933.)

[3] Case law antedating the effective date of section 1021.5 (Jan. 1, 1978) continues to be relevant to evaluate a claim for attorney's fees under a private attorney general theory. (See *Woodland Hills Residents Assn.* v. *City Council of Los Angeles, supra,* 23 Cal.3d 917, 934.)

In the present case, the trial court concluded that Save El Toro is not entitled to attorney's fees under the substantial benefits theory. This was not error, as discussed above. However, the trial court evaluated appellant's motion for attorney's fees only under the substantial benefits doctrine. The court did not evaluate the motion under the private attorney general theory in terms of the four factors specified in section 1021.5. This was error. This fundamental error requires reversal of the order denying the motion for fees and a remand for a proper determination of appellants' motion under the criteria of section 1021.5 and the discussion of those criteria in *Woodland Hills Residents Assn. v. City Council of Los Angeles, supra,* 23 Cal.3d 917, 934-942. (Also see *Gunn* v. *Employment Development Dept.* (1979) 94 Cal.App.3d 658 [156 Cal.Rptr. 584]; *Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747 [155 Cal.Rptr. 269]. The trial court, using its traditional equitable discretion now codified in section 1021.5, is in the best position to realistically assess the litigation from a practical perspective under the private attorney general theory.

If the trial court determines that Save El Toro is entitled to attorney's fees under the private attorney general theory, the court should determine the amount of the fees in light of (1) the time spent and the reasonable hourly compensation of each attorney involved in the presentation of *Save El Toro I;* (2) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; (4) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (5) the fact that an award against the city would ultimately fall upon the taxpayers; (6) the fact that the attorneys here did not receive public and charitable funding for the purpose of bringing lawsuits of the character here involved; (7) the fact that the award would inure to the benefit of the attorneys involved; and (8) any other relevant factors. (See *Serrano III, supra,* 20 Cal.3d 25, 48-49.)

Respondents contend that the city should not be held liable for attorney's fees because it has not been guilty of any "obdurate behavior" in the course of adopting general or open space plans or of defending the suit in *Save El Toro I.* A successful party may obtain an award of attorney's fees from an opponent who has maintained an unfounded action or defense "'in bad faith, vexatiously, wantonly or for oppresssive

reasons.'" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 26 [112 Cal.Rptr. 786, 520 P.2d 10], quoting 6 Moore, Federal Practice (2d ed. 1971) p. 1709. See also *Serrano III, supra,* 20 Cal.3d 25, 42.) ■ There is no special requirement that a party establish that its opponent was guilty of obdurate behavior in order to receive attorney's fees under the private attorney general theory.

Whether the litigation was actually necessary in order to vindicate the rights of the public has a strong bearing on the question whether, in the words of section 1021.5, a "significant benefit" has resulted. That is to say, the public agency might show that no significant benefit resulted from the litigation if the same result could have been obtained by other available means.

The order denying the motion for attorney's fees is reversed with directions to the superior court to rule on appellant's motion for attorney's fees in a manner consistent with this opinion.

Caldecott, P. J., concurred.

POCHÉ, J.—I concur in the result and in most of the reasoning of the majority opinion. My reservation lies with the dicta: "Whether the litigation was actually necessary in order to vindicate the rights of the public has a strong bearing on the question whether, in the words of section 1021.5 a 'significant benefit' has resulted. That is to say, the public agency might show that no significant benefit resulted from the litigation if the same result could have been obtained by other available means."

If this language compels the party seeking an award of fees to sustain the burden of pleading and proving that all other possible means and methods of achieving the results of the litigation would have been less economical, more time-consuming and more burdensome, then I separate myself from it. I find no basis for such an obstacle in Code of Civil Procedure section 1021.5, in the case law or in any sound conception of public policy.

If, on the other hand, this language indicates merely that such evidence could be relevant by way of defense or mitigation, then I have less concern. Access to knowledge regarding the matter at issue is a factor to be considered in allocating the burden of proof. (Evid. Code,

§ 500, Cal. Law Revision Com. comment; Hazard & James, Civil Procedure (2d ed. 1977) § 7.8, pp. 251-252.)

In the case at bar the city attorney is in a better position to know, for example, whether a letter to the city council would have resolved the matter.

I suspect that the question of which party has the burden of proof (see Evid. Code, § 500 et seq.) or the burden of producing evidence (see Evid. Code, § 550) is not important in most cases of this kind. In major, complex litigation of the *Serrano* variety, however, questions of this sort are complex and time consuming. This would be especially true if the plaintiff were required to bear the additional burden of providing that the same result could not have been obtained by other available means.

Additionally, it must be emphasized that a condition precedent to this novel defense is proof that the "other possible means and methods" were unequivocally offered to plaintiff at an early stage in the dispute. If, for example, a letter from the city attorney or the city council would have made the lawsuit (or the trial thereof) unnecessary, the defendant must show that it made such an offer as an attempt to mitigate damages. It is not enough for the defendant to announce to the world after months of litigation that it was unnecessary to have made a "federal case" out of the dispute.