Filed 12/14/15  Sulatycky v. Sajahtera, Inc. CA2/5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBERT SULATYCKY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAJAHTERA, INC. and ALBERTO DEL HOYO,<br><br>    Defendants and Respondents. | B259543<br><br>(Los Angeles County<br><br>Super. Ct. No. BC463162) |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Law Offices of Rob Henning, Hennig Ruiz, Rob Henning and Brandon Ruiz for Plaintiff and Appellant.

Stokes Wagner Hunt Maretz & Terrell, Peter B. Maretz and Shirley Banner Gauvin for Defendants and Respondents.

**INTRODUCTION**

Plaintiff and appellant Robert Sulatycky (plaintiff) appeals from an order granting a motion for attorney fees in favor of defendants and respondents Sajahtera, Inc.[1] and Albert del Hoyo (defendants). The order was entered following the trial court's granting of defendants' motion for summary judgment as to plaintiff's complaint, including his claims under FEHA—California Fair Employment and Housing Act (Gov. Code § 12900 et seq.). Defendants moved for attorney fees under Government Code section 12965, subdivision (b) [prevailing employer entitled to attorney fees when the action is "unreasonable, frivolous, meritless, or vexatious"] and Code of Civil Procedure sections 998, subdivision (c)(1)[2] and 1033.5, subdivision (a)(10). The trial court awarded defendants attorney fees in the amount of $76,000.

Plaintiff argues that the trial court abused its discretion in awarding attorney fees because his FEHA claims were reasonable and meritorious and because the fee award was excessive. We hold that the trial court did not abuse its discretion in determining entitlement to and the amount of attorney fees. We therefore affirm the order granting attorney fees.

---

[1] Sajahtera, Inc. is the holding company used by the Sultan of Brunei to own and operate the Beverly Hills Hotel (hotel).

[2] Other than to point out that the standard for awarding attorney fees to a prevailing defendant under Code of Civil Procedure section 998 in a FEHA case is the same as the Government Code section 12695, subdivision (b) standard, neither of the parties rely on section 998 as a basis for the attorney fees award. That section involves offers to compromise. As here, when the award is less than the defendant's offer, the defendant is entitled to costs. (Code Civ. Proc., § 998, subd. (e).) Those costs may include attorney fees if there is a contractual attorney fee clause. (See *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103.) Whether attorney fees under Code of Civil Procedure section 998, subdivision (e) can be awarded in view of Government Code section 12965, subdivision (b) is a matter we do not have to resolve.

2

# BACKGROUND

Plaintiff and four of his former coworkers filed suit against defendants. In the operative third amended complaint, plaintiff asserted (i) a FEHA sex discrimination claim based on the behavior of defendant del Hoyo—the hotel's general manager—in allegedly favoring women over men; (ii) a FEHA harassment claim based on allegations that the hotel's general manager harassed him because of his sex and forced him to engage in discriminatory employment practices; (iii) a FEHA claim for failure to prevent discrimination and harassment; and (iv) a claim for constructive discharge in violation of public policy. In September 2012, defendants served plaintiff with a settlement offer under Code of Civil Procedure section 998, which offer plaintiff rejected.

Defendants filed a motion for summary judgment.[3] Before plaintiff's opposition to the summary judgment motion was due, he filed a motion for a terminating sanction based on alleged spoliation of evidence by hotel executives. The trial court denied the sanction motion, and, on the appeal from that ruling, we affirmed the order denying sanctions.

The trial court heard oral argument on defendants' summary judgment motion and issued an order granting summary judgment. Thereafter, the trial court entered a judgment of dismissal in favor of defendants. Plaintiff filed a timely notice of appeal from that judgment, and we affirmed the judgment in the same appeal that we affirmed the denial of the sanctions motion.

Following the entry of judgment, defendants filed a motion for attorney fees and costs. They sought $295,021.58 in attorney fees and costs in the amount of $59,240.06. Defendants' motion was based upon Government Code section 12965, subdivision (b) and Code of Civil Procedure section 998, subdivisions (c)(1) and 1033.5, subdivision (a)(10).

---

[3]   We judicially notice the documents that are part of the record in case number B256972, the appeal of the summary judgment. The facts of the case are set forth in our opinion in that appeal.

The trial court granted defendants' motion for attorney fees against plaintiff in the amount of $76,000, but ruled that the request for costs was moot as the cost issue was raised in plaintiff's motion to strike costs, which motion the trial court denied. The trial court, after setting forth the law concerning attorney fees under Government Code section 12965, subdivision (b) and reciting the contentions of the parties, concluded as follows: "As stated in the court's ruling on the defendant[s'] motion for summary adjudication, plaintiff's claims had no merit as they were unsupported by insufficient [*sic*] evidence. They were groundless and without foundation. There was no evidence to support any of his claims. Even in the opposition to the motion for attorney's fees, plaintiff does not point to any evidence to support his argument that his claims had merit. See also therapist notes detailing the reasons for his resignation. Accordingly, defendant[s are entitled [their] attorney's fees. See *Bond* [*v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 922-923]; *Guthrey* [*v. State of California* (1998) 63 Cal.App.4th 1108, 1122, 1126]." The trial court concluded that defendants' hourly rates were reasonable, but reduced the award to $76,000 taking into consideration plaintiff's ability to pay. Plaintiff filed a timely notice of appeal.

## DISCUSSION

### A.    Standard of Review

In reviewing a trial court order assessing attorney fees against a plaintiff in a FEHA action, we use the abuse of discretion standard of review. (Gov. Code, § 12965, subd. (b); *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 101-102; *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1049-1050; *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1386-1387.) In reviewing the reasonableness of the amount of the attorney fees awarded, the standard of review is also abuse of discretion. (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1274.)

4

## B.     Applicable Law

Government Code section 12965, subdivision (b) authorizes an award of reasonable attorney fees and costs to the prevailing party in an action brought under FEHA.  California courts have interpreted the statute in accordance with federal law to the effect that although a prevailing plaintiff in a FEHA case is entitled to attorney fees in the discretion of the trial court, a prevailing defendant in a FEHA case cannot recover attorney fees unless the plaintiff's action is found by the trial court to be unreasonable, frivolous, or groundless.  (See *Williams v. Chino Valley Independent Fire Dist., supra,* 61 Cal.4th at p. 103-104; *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 419-420.)

The theory behind the distinction in FEHA cases between a plaintiff and a defendant in the recovery of attorney fees is to "'make it easier for a plaintiff of limited means to bring a meritorious suit,'" while serving "'to deter the bringing of lawsuits without foundation,' 'to discourage frivolous suits,' and 'to diminish the likelihood of unjustified suits being brought.'"  (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 420.)  The United States Supreme Court in *Christiansburg* explained that, "[i]n applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."  (*Id.* at pp. 421-422.)  Cases affirming an attorney fees award to a defendant in a FEHA case have done so when the plaintiff was not truthful about discrimination (*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett* (1999) 74 Cal.App.4th 1211, 1228-1229), when the plaintiff had released defendant (*Linsley v. Twentieth Century Fox Film Corp.* (1999) 75 Cal.App.4th 762, 771-772), when there was no evidence of discrimination (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1200), and when the claim of discrimination was based only on the plaintiff's opinion and no evidence (*Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 73).

5

On the other hand, a court has reversed an award in favor of a defendant in a FEHA case, even though the defendant had obtained a summary judgment, because in that case, the claim was based on an alter ego theory and there was evidence to support some aspects of that theory, but not enough to show an inequitable result if the alter ego doctrine was not applied.  (*Leek v. Cooper, supra,* 194 Cal.App.4th at p. 421.)  In *Baker v. Mulholland Security & Patrol, Inc.* (2012) 204 Cal.App.4th 776, 784, the court concluded, "In our review of the record, we conclude the action was not frivolous, because plaintiff made a prima facie case of retaliation.  An action is not frivolous simply because the plaintiff's FEHA claim failed."

### C.    Analysis

#### 1.    *Written Findings*

Plaintiff contends that because there were no written findings by the trial court, a reversal is required.  It has been held that the trial court is required to make written findings when awarding attorney fees to defendants in a FEHA action.  (See *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 868.)  But in *Robert v. Stanford University, supra,* 224 Cal.App.4th at pages 71 to 72, the court said that the lack of written findings, by itself, does not result in an automatic reversal because the appellant must also demonstrate the requisite prejudice under Article VI, section 13, of the California Constitution.  In addition, it appears that a minute order with findings satisfies the requirement, if any, of written findings.  (*Leek v. Cooper, supra,* 4 Cal.App.4th at pp. 420-421.)

The trial court issued a minute order finding that "plaintiff's claims had no merit as they were unsupported by insufficient [*sic*] evidence"; "there was no evidence to support any of his claims; "even in the opposition to the motion for attorney fees, plaintiff does not point to any evidence to support his argument that his claims had merit;" and "see also therapist notes detailing the reasons for his resignation."  These findings are sufficient to comply with any requirement of written findings.

6

## 2. Legal Standard

Plaintiff claims the trial court abused its discretion by using an improper standard for awarding attorney fees. According to plaintiff, the trial court awarded fees based solely on the fact that defendants had prevailed on their summary judgment motion by showing that plaintiff's FEHA claims lacked legal merit. Plaintiff contends that under Government Code section 12965, subdivision (b) as applied by the authorities, a defendant seeking attorney fees thereunder must show more than merely that it prevailed on summary judgment.

The trial court's minute order does refer to the summary judgment motion, but then goes on to state that the case had "no merit," was "unsupported by insufficient [*sic*] evidence;" and was "groundless and without foundation." Those findings show that the trial court did not just rely on the summary judgment; it relied on other factors that are consistent with the required legal standard. Indeed, the trial court's order set forth the applicable law, the parties' contentions, and its conclusions, thus indicating it applied the correct legal standard.

## 3. Other Claimed Defects

Plaintiff asserts that the trial court did not in the order granting summary judgment specify that his claims were wholly without merit. But a grant of summary judgment is a determination that plaintiff's claims lacked legal merit. There is no requirement in awarding attorney fees to a defendant under Government Code section 12965, subdivision (b) that the trial court specify in the underlying judgment or order the grounds that would justify the subsequent award of attorney fees. Also, contrary to plaintiff's position, there is no requirement that the trial court in awarding fees detail "transgressions" by plaintiff. The only requirement for an award of attorney fees is that the action must be found to be "unreasonable, frivolous, meritless or vexatious." (*Cummings v. Benco Building Services, supra,* 11 Cal.App.4th at p. 1387.)

### 4. No Abuse of Discretion in Awarding Attorney Fees

Plaintiff does not attempt to point to evidence that shows the good faith, merit, or reasonableness of his FEHA claims. He just points to the trial court's statement summarizing his allegations in the operative complaint, but to no actual evidence. Indeed, we affirmed the summary judgment because plaintiff failed to comply on appeal with the procedural requirements governing the contents of the statement of facts and citation to the evidentiary record in an opening brief.

In ruling on the summary judgment motion, the trial court ruled that plaintiff did not show that he had suffered an adverse employment action from any discrimination. The trial court also ruled that he did not show severe or pervasive harassment directed at him. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1043.) And, because there was no actionable discrimination or harassment, the trial court concluded there was no valid claim for failure to prevent discrimination or harassment. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352.) The trial court further ruled that there was no constructive discharge because plaintiff voluntarily left his employment for reasons discussed below and there was no conduct that effectively forced plaintiff to resign.

Plaintiff, the second highest paid employee at the hotel, had asserted he left his job with the hotel because of defendant's acts of sex discrimination, harassment, failure to prevent discrimination and harassment, and constructive discharge in violation of public policy. But plaintiff's proffered evidence in support of those allegations was undermined by defendants' evidence showing that he never complained about the alleged discrimination and harassment and that he had confided in his therapist that he had left his job for reasons unrelated to his discrimination and harassment allegations.

The trial court noted that plaintiff "never once mentioned [to his therapist] oppressive working conditions or the alleged sexist or racist actions of del Hoyo [the hotel's general manager] as a reason for wanting to leave." The trial court also noted that

8

plaintiff never made a written complaint regarding discrimination or harassment, despite knowing there was an obligation to complain and procedure for doing so.[4]

The notes of plaintiff's therapist contained many statements by plaintiff describing his perceptions of his employment and reasons for leaving—none of which concerned the matters that were the subject of his action. Specifically, plaintiff told his therapist the following: "I think at some point when my [injured] leg is better[,] I wouldn't mind [leaving]. I have already contacted some of the top headhunters in the world, to look for another job. I have always stayed in a location for three years and I start to itch. Then I would reach this plateau. In this company they have moved me up but I don't see any more challenges coming down the road and I get bored really easy. I should have left in 2008 before the economy tanked. The way the company hammers us about the economy but we are still a profitable hotel. I'm tired of getting beat up. I want to disappear. I called up some headhunters and it's been five years. What I am looking for doesn't come around that often. If a job offer comes through and then I am out of here. Once the divorce papers [are final] I am out of here. I don't really like L.A. It feels like an itchy sweater. It's not my town. [¶] . . . [¶] I've been there for five years and it is the longest I have been anywhere. You don't see many chefs sticking around in one place. I do want to move on. I am just hanging on because of [the injury to my leg from a skiing accident]. They are going to cover whatever it costs [to treat] my leg. The economy is tanking too and it is not fun. Every quarter we have to present the reports. The CFO drills holes in the numbers. I finally said to them. After hours of trying to explain to them I a[m] told that it's not my fault that the economy is not my fault. It's just not fun right now. I wake up every morning and my knee wakes me up all night. My knee takes twenty or thirty minutes to stand or move. One night I didn't sleep all night. A lot of this

---

[4]     At oral argument, plaintiff referred to a footnote in his reply brief in this appeal in which he quotes an excerpt from his deposition testimony explaining why he believed following the hotel's complaint procedures would have been futile. That testimony, however, does not contradict the undisputed fact that he never lodged a required formal complaint, written or otherwise complained.

has to do with this lack of interest or love.  At the end of the day what I am inside is a cook.  Now I am purely an administrator.  Making sure the figures align.  I am interested in that too.  Having been removed from the kitchen four years I am out of touch with the trends of food.  I grapple with this decision.  I don't know what to do.  I can't think about that until I get my leg organized.  My boss is being hammered about what we are not doing.  All we kids take shit from the CFO.  I am so tired of it.  I just want to cash out and disappear. . . . I have built my reputation on my ability to clean up staff and make things work.  I have no problem saying to someone your fired.  Every place I have gone has been clean[ed] up.  I cleaned up [the hotel] and should have left two years ago.  Right at the height.  I feel like a prisoner.  An hour doesn't go by when I don't think about the time when I am done.  I think about that all the time.  My personal life is a mess, my physical life is a mess and my work life is not good.  I hate my job. . . . The bottom line is that I have done what I can do at that hotel I am not challenged by it.  It is really time for me to move on from my job. . . . There are two things in my mental struggle.  One is my leg and I will do whatever it takes to get my leg back.  The other one is work.  It is a bit of a blessing in disguise that he took me out of work for three months.  My insurance will pay me full pay for three months.  I have had two full nights of sleep.  I shut everything off.  I get a phone call yesterday about a job in Cape Code in some chi chi resort.  It's not the place I would want to work because of the snow.  They said that I was the super star that they are looking for.  I would be involved in the kitchen.  I need to get back to creating with food.  I want to be creative but not in the kitchen every day.  They close from December 1st to April 1st.  That is very attractive.  What is intriguing is that they are not corporate, they are owned by a family.  They micro manage everything."

Based on the foregoing evidence showing a complete lack of factual support for plaintiff's FEHA claims, the trial court correctly concluded that plaintiff's claims fell within the standard set forth in Government Code section 12965, subdivision (b), i.e., "unreasonable, frivolous, meritless, or vexatious."  The trial court noted that "plaintiff does not point to any evidence to support his argument that his claim had merit."  That is true on appeal also.  Accordingly, the trial court did not abuse its discretion by finding

that plaintiff's statements to his therapist and his failure to complain about alleged misconduct established that plaintiff's claims were meritless.

At oral argument, plaintiff emphasized that his therapist's notes were hearsay and lacked foundation, and therefore they should not have been admitted or relied upon by the trial court in ruling on the summary judgment motion. Although plaintiff made boilerplate objections to the admission of the notes in opposition to the summary judgment motion, the trial court implicitly overruled any such objections by relying on the notes in ruling on the motion. It was therefore incumbent upon plaintiff to raise an adequate challenge to the admission of those notes in his appeal from the summary judgment. In his opening brief in the summary judgment appeal, however, plaintiff failed to adequately raise the issue on appeal, [5] resulting in a waiver of such challenge. (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 ["An appellant's failure to raise an argument in the opening brief waives the issue on appeal"].)


**D.      No Abuse of Discretion in Amount of Attorney Fees**

Plaintiff challenges the amount of the attorney fees on the ground that such fees were "uncommon" and, based on plaintiff's financial situation, excessive. Plaintiff does not cite to any authority that a trial court must consider whether the amount of fees is "common" or "uncommon." Each application for attorney fees "stands on its own," and fees cannot be set "based on the awards made in other cases." (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.)

---

[5]      The entire discussion of the admissibility issue in the opening brief—which did not appear under a separate point heading—read as follows: "[Plaintiff] contends that the trial court's undue reliance on the notes of his therapist, William Cloke[,] was an impermissible use of hearsay evidence [19AA4724-4726]. These notes were subject to timely objections by [plaintiff] [AA153707]. These notes should never have been admitted nor used by the trial court." Plaintiff cited no authority for his conclusory assertions and made no attempt to analyze the issue or develop his arguments. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief on appeal must state each point under a separate point heading and support each point by argument and citation to authority].)

11

Moreover, the trial court did consider plaintiff's ability to pay in arriving at the $76,000 figure, which is approximately one-fourth of the fees sought by defendants. Plaintiff had earned a substantial salary in the past and indicated he had employment opportunities in the past. And the trial court noted that there was no evidence that plaintiff "could not be making a very good salary or that he lacks the ability to do so if he so desired." Thus, there is nothing in the record to suggest that the trial court abused its discretion in arriving at the amount of the attorney fees.

## DISPOSITION

The order awarding defendants attorney fees is affirmed. Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

12